IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| J & J Sports Productions, Inc., | ) | |
| | ) | Civil Action No. 3:11-2434-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Mucho Margarita LLC, d/b/a Mucho | ) | |
| Margaritas Bar & Grill, and Maria Leon, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On September 12, 2011, J & J Sports Productions, Inc., ("Plaintiff") filed an action in this court against Mucho Margarita LLC ("Mucho Margarita") and Maria Leon ("Leon") (collectively "Defendants"). Plaintiff alleges that it owned the exclusive television distribution rights for a boxing match, and that Defendants exhibited the fight at a commercial establishment without paying a licensing fee to Plaintiff. Plaintiff has asserted claims under the Communications Act, 47 U.S.C. § 605, and the Cable Communications Policy Act, 47 U.S.C. § 553, as well as a state law claim for conversion. Neither Defendant filed an answer or otherwise responded to Plaintiff's complaint. On October 31, 2011, in response to Plaintiff's request, the clerk entered default as to both Defendants. On November 14, 2011, Plaintiff filed a motion for default judgment.

## FACTS

The following facts are alleged in Plaintiff's complaint and, due to Defendants' default, are accepted as true. Mucho Margarita is a South Carolina limited liability company doing business as Mucho Margaritas Bar & Grill in Columbia, South Carolina. Leon is a South

Carolina citizen and a member, principal, alter ego, manager, agent, and/or representative of Mucho Margarita. Leon has dominion, control, oversight, and management authority over Mucho Margaritas Bar & Grill. Plaintiff purchased the exclusive television distribution rights to "Number One: Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight" (the "Program"), which took place on September 19, 2009. Leon and Mucho Margarita, or their agents, exhibited this program at the time of its transmission with full knowledge that unauthorized interception was unlawful. This interception was done willfully and for the purposes of commercial advantage or financial gain. Leon was present during this conduct and/or authorized or controlled this conduct.

The following facts are set out in a sworn affidavit by private investigator Jeff Spivack. *See* ECF No. 12-4. Spivack went to Mucho Margaritas Bar & Grill on September 19, 2009 and observed that the Program was being shown on one television. He states that the approximate capacity of the establishment is 75 customers, and that he observed between 22 and 25 customers present. According to a sworn affidavit by Plaintiff's president, Joseph Gagliardi, based on its capacity of not more than 100 persons, it would have cost $2200 for Mucho Margarita to purchase the rights to exhibit the Championship Fight. ECF No. 12-3 at 3 & 10.

## DISCUSSION

### A.    Liability

Under 47 U.S.C. § 605(a), "no person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney." Any person

2

aggrieved by such a violation may bring a civil action to obtain an injunction and to recover

damages, costs, and attorney fees. 47 U.S.C. § 605(e)(3). The aggrieved party may recover

actual damages or statutory damages between $1,000 and $10,000 for each violation. 47 U.S.C.

§ 605(e)(3)(C)(i). Furthermore, if the court finds that "the violation was committed willfully and

for purposes of direct or indirect commercial advantage or private financial gain," the court may

increase the damages by an amount not more than $100,000 for each violation. 47 U.S.C. §

605(e)(3)(C)(ii).

Under 47 U.S.C. § 553(a)(1), "[n]o person shall intercept or receive or assist in

intercepting or receiving any communications service offered over a cable system, unless

specifically authorized to do so by a cable operator or as may otherwise be specifically

authorized by law." 47 U.S.C. § 553(a)(1). Any person aggrieved by such a violation may bring

a civil action to obtain an injunction and to recover damages, costs, and attorney fees. 47 U.S.C.

§ 553(c). The aggrieved party may recover actual damages or statutory damages between $250

and $10,000 for all violations involved in the action. 47 U.S.C. § 553(c)(3)(A). Furthermore, if

the court finds that "the violation was committed willfully and for purposes of commercial

advantage or private financial gain," the court may increase the damages by an amount not more

than $50,000. 47 U.S.C. § 553(c)(3)(B).

The Seventh Circuit has held that § 605 and § 553 employ mutually exclusive categories,

specifically that a "communications service offered over a cable system" is not a "radio

communication." *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996). In other words, a

person who steals cable services at the point of delivery is liable only under § 553, even if the

signals were transmitted by radio at some earlier point. On the other hand, the Second Circuit

has disagreed and held that some cable transmissions may also constitute "radio

3

communications" under § 605.  *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d

Cir. 1996).  The Fourth Circuit has not considered the question.  Consistent with other courts in

the District of South Carolina, this court finds that the reasoning of *Norris* is more persuasive.

*See Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124 (D.S.C. 1996).

 As a result, Defendants are liable under § 605 only if they exhibited radio or satellite

communications without authorization and liable under § 553 only if they received cable

communications without authorization.  Plaintiff has alleged that the Program was received and

exhibited without authorization.  However, Plaintiff notes that the Program could have been

received through various media, including radio, satellite, and cable, and that there is no way to

determine how Defendants received the Program without the benefit of discovery.  For this

reason, Plaintiff requests to proceed under § 605, which authorizes higher damages.  The court

finds this to be a reasonable solution.  The court finds that Mucho Margarita and Leon violated

47 U.S.C. § 605 by exhibiting interstate radio communications without authorization to

customers at a commercial establishment.  Furthermore, based on Plaintiff's well-pleaded

allegations, the court finds that the violation was committed willfully and for the purposes of

commercial advantage or financial gain.

 Plaintiff also seeks damages based on a tort theory of conversion.  However, recovery

under both § 605 and the tort of conversion would result in an impermissible double recovery for

the same loss.  *See, e.g., J & J Sports Prod., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*,

2010 WL 1838432 at \*2 (D.S.C. Apr. 5, 2010).  Because Plaintiff has indicated its choice to

proceed under § 605 and to not pursue the conversion claim, the court will address damages only

under § 605.

**B.      Damages**

Plaintiff elects to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff seeks an award of $10,000, the maximum authorized amount.  As explained above, it

would have cost $2,200 for Defendants to purchase the rights to exhibit the Program at Mucho

Margaritas Bar & Grill.  The court finds that an award of $2,200 fairly approximates the actual

harm to Plaintiff resulting from Defendants' unauthorized exhibition of the Program.

Plaintiff also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) because

Defendants' violation was committed willfully and for the purposes of commercial advantage or

financial gain.  Plaintiff requests $100,000, the maximum authorized amount.  Plaintiff argues

that it loses much revenue due to unauthorized commercial exhibition of its boxing programs

because legitimate bars and restaurants cannot afford to compete with "pirate" bars and

restaurants.  Plaintiff explains that due to the significant costs of purchasing its programs,

legitimate bars and restaurant typically must charge a cover fee or otherwise raise food and drink

prices when they are showing the programs.  Plaintiff argues that pirate bars and restaurants gain

a competitive advantage because they are able to show the programs without charging cover fees

or raising prices.  Plaintiff further contends that requiring the violator to pay only what it would

have cost to license the program originally does nothing to deter such violations, particularly

when there is a chance of avoiding detection.

The court agrees that an enhanced award is necessary to deter the willful piracy of

Plaintiff's programs.  The court finds that enhanced damages in the amount of four times the

basic statutory damages, or $8,800, provides just and adequate deterrence for such willful

violations.  Accordingly, the court awards total damages in the amount of $11,000.

**C.     Costs and Attorney Fees**

The court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  Because Plaintiff is an aggrieved party that has prevailed, it is entitled to recover costs and attorney fees. Plaintiff submitted affidavits of its South Carolina counsel and its California counsel in support of its request for costs and attorney fees.  ECF No. 12-6; ECF No. 12-7.  The court grants costs to Plaintiff in the amount of $1,173.92, including filing fees, investigative services, and process service costs.

In this default matter, no one has appeared to challenge the attorney fees Plaintiff seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates, the court must consider the following factors:  (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fees awarded in similar cases.  *Barber v. Kimbrell's, Inc.,*  577 F.2d 216, 226 (4th Cir. 1978). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case.  "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee."

*E.E.O.C. v. Servo News Co.,* 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The information Plaintiff provided, coupled with the court's knowledge of rates in work of this type in this district, supports attorney fees in the amount of $1,746.25. Based on the information and supporting documents before the court at this time, the court concludes that the judgment against Defendants should include an award of costs and attorney fees in the amount of $2,920.17 ($1,173.92 costs plus $1,746.25 attorney fees).

## CONCLUSION

Plaintiff's motion for default judgment is granted. The court finds that Defendants willfully violated 47 U.S.C. § 605. Judgment in favor of Plaintiff is entered against Defendants, jointly and severally, in the amount of $13,920.17, comprising $11,000 in damages and $2,920.17 in costs and attorney fees.

**IT IS ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina
June 5, 2012